UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DAOUD NELSON,

                          Plaintiff,                Case No.: 1:25-cv-03269 (JRC)

      -against-

AKELIUS REAL ESTATE MANAGEMENT LLC,        COMPLAINT
VIOLA HUBBARD, individually,
KIMIYA KHOSRAVANI, individually,              Plaintiff Demands a Trial
MARC WINN, individually, and                 By Jury On All Issues
MARIA WERNER, individually,

                         Defendants.
------------------------------------------------------------------X

Plaintiff Daoud Nelson (hereinafter referred to as "Plaintiff" or "Plaintiff") by and through

his attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants Akelius

Real Estate Management LLC ("Akelius"), Kimiya Khosravani, individually, Viola Hubbard,

individually, Marc Winn, individually, and Maria Werner, individually (hereinafter referred to

collectively as "Defendants"), upon information and belief, as follows:

<u>NATURE OF ACTION</u>[1]

1. Plaintiff complains pursuant to New York Executive Law § 296 et seq. (New York State

   Human Rights Law, "NYSHRL"), Title 8 of the Administrative Code of the City of New York

   § 8-107 et seq. (New York City Human Rights Law, "NYCHRL"), the New York Labor Law

   ("NYLL") § 194 (New York Achieve Pay Equity Act), NYLL § 215, NYLL § 740 (New York

   Whistleblower Law, as amended effective January 26, 2022), NYLL Article 6 §§ 190 et seq.,

   NYLL Article 19 §§ 650 et seq., NYSHRL § 296(5) and NYCHRL § 8-107(5) (housing

---

[1] Plaintiff files this Complaint solely to comply with the Court's March 5, 2026 Text Order denying Plaintiff's Motion to Remand with Leave to renew upon service and filing of Plaintiff's Complaint. Plaintiff expressly disclaims any intent to invoke or submit to federal jurisdiction. Plaintiff reserves all rights to challenge subject-matter jurisdiction and seek remand to state court.

1

discrimination), and the common law of the State of New York, to redress the injuries Plaintiff suffered as a result of race and color discrimination, sex and gender discrimination, sexual harassment, hostile work environment, retaliation, retaliatory hostile work environment, whistleblower retaliation, unequal pay, failure to pay overtime and earned wages, discriminatory interference with housing rights, post-employment housing retaliation, defamation, and unlawful termination.

## **JURISDICTION AND VENUE**

2. All claims asserted herein arise exclusively under the laws of the State of New York and the City of New York, specifically: New York Executive Law § 296 et seq. (NYSHRL); New York City Administrative Code § 8-107 et seq. (NYCHRL); New York Labor Law §§ 194, 215, 740, Article 6 (§§ 190 et seq.), and Article 19 (§§ 650 et seq.); NYSHRL § 296(5) and NYCHRL § 8-107(5) (housing); and the common law of the State of New York. Plaintiff does not assert any federal cause of action.

3. Kings County supreme Court has subject matter jurisdiction over this action pursuant to CPLR § 301 and/or 302. This Court has jurisdiction over Defendants because they transact business and are present in the State of New York.

4. Venue is proper in Kings County pursuant to CPLR § 503(a) because Plaintiff resides in Kings County and the acts and omissions giving rise to this action, in whole or in part occurred in Kings County.

5. All conditions precedent to filing this action have been satisfied. A tolling agreement was entered into around August 9, 2024. Plaintiff timely filed a Summons with Notice in the Supreme Court of the State of New York, Kings County, on January 31, 2025. The NYSHRL and NYCHRL each provide a three-year statute of limitations. All claims are timely.

**THE PARTIES**

6. Plaintiff DAOUD NELSON ("Plaintiff" or "Plaintiff") is an African American male and a resident of the State of New York, Kings County. At all times material, Plaintiff was employed by Defendant AKELIUS REAL ESTATE MANAGEMENT LLC ("Akelius") from around February 17, 2021 through May 20, 2024. Plaintiff also resides in an apartment owned and managed by Akelius in Brooklyn, New York.

7. Defendant AKELIUS REAL ESTATE MANAGEMENT LLC ("Akelius") is a foreign limited liability company duly existing under the laws of the State of New York, located at 30 West 22nd Street, Fifth Floor, New York, NY 10010. Akelius is a global Swedish-based real estate company. The New York office has approximately 40–60 employees. At all relevant times, Akelius employed Plaintiff and also served as Plaintiff's landlord.

8. Defendant KIMIYA KHOSRAVANI ("Khosravani") is an Iranian female and, at all times material, served as the Regional Vice President and Head of New York at Akelius. Khosravani held supervisory authority over Plaintiff, including the power to hire, fire, transfer, assign work, and otherwise control the material aspects of Plaintiff's employment.

9. Defendant VIOLA HUBBARD ("Hubbard") is an African American female and, at all times material, served as the Head of Staff and Human Resources at Akelius. Hubbard held supervisory authority over Plaintiff and was responsible for receiving and responding to Plaintiff's complaints of discrimination, harassment, retaliation, and wage violations. Hubbard is sued individually pursuant to the NYSHRL and NYCHRL.

10. Defendant MARC WINN ("Winn") is a Caucasian male and, at all times material, served as Construction Team Lead at Akelius. Winn held supervisory authority over Plaintiff, including

3

the power to hire, fire, assign work, and control material aspects of Plaintiff's employment. Winn is sued individually pursuant to the NYSHRL and NYCHRL.

11. Defendant MARIA WERNER ("Werner") is a Caucasian female who, at all times material, was employed by Akelius as a Leasing Agent and later as Junior Construction Manager. Werner was a coworker of Plaintiff. Werner is sued individually pursuant to the NYSHRL and NYCHRL.

## STATEMENT OF FACTS

### A. Background and Employment

12. Around February 17, 2021, Akelius hired Plaintiff as a Leasing Manager in its Manhattan, New York office. At the time of hire, Plaintiff had more than ten (10) years of experience in the real estate industry and was highly qualified for the position.

13. At the time of hire, Plaintiff's compensation as Leasing Manager consisted of a base salary plus commission Upon his involuntary transfer to Junior Construction Manager in December 2021 a transfer in retaliation to his complaint against Defendants, Plaintiff lost his commission-based compensation structure entirely and was placed on straight salary, resulting in a significant reduction in total compensation.

14. As Leasing Manager, Plaintiff worked with Julien (leasing manager and team supervisor), Jissela Rivera, and Defendant Werner as a four-person team supervised by Asset and Property Manager Andrew Nicol. This four-person team split leasing commissions equally among all members.

15. From the outset of his employment, Plaintiff was the only Black male employee at Akelius's New York office. To Plaintiff's knowledge, Black male employees at Akelius held only lower-paying, lower-level positions such as Porter or Superintendent. Most new hires were white or

4

Hispanic. Plaintiff was the only Black Leasing Manager and later the only Black Construction Manager in the New York office.

16. At all times material, Plaintiff was the darkest-skinned employee in a managerial or professional role at Akelius's New York office. To Plaintiff's knowledge, no dark-skinned Black employee held a higher-level or managerial position at Akelius's New York office. The discriminatory treatment Plaintiff suffered was motivated not only by his race but by the darkness of his complexion, constituting unlawful color discrimination.

**B. Race and Color Discrimination, Hostile Work Environment, and Discriminatory Work Assignments**

17. Shortly after Plaintiff began his employment around early 2021, Defendant Werner began excluding him from shared work resources. Specifically, Werner shared leasing spreadsheets with white coworkers but refused to share those same spreadsheets with Plaintiff when he specifically requested them. Werner offered no legitimate reason for her refusal.

18. Also from the early months of his employment, Defendant Werner and coworker Jissela refused to attend property showings in certain neighborhoods, specifically Harlem and parts of Brooklyn, claiming the neighborhoods were "unsafe." Defendant Werner said no one should live in Harlem. Werner and Jissela regularly failed to return calls from agents and clients seeking showings in Harlem and Brooklyn, forcing Plaintiff to cover those calls and appointments in addition to his own workload. To this day, Plaintiff continues to receive calls from agents and clients stating that they are unable to reach Werner or Jissela — demonstrating that the discriminatory pattern of refusing to service certain neighborhoods was not a temporary inconvenience but a persistent and ongoing practice. This continuing refusal implicates not only Plaintiff's claims of discriminatory work assignment but also raises

concerns regarding Akelius's obligations to provide equal housing services regardless of neighborhood.

19.  As a direct result, Plaintiff was disproportionately and exclusively assigned to work in those neighborhoods. This required him to work additional days, weekends, and out of coffee shops rather than from the office, while Jissela and Werner worked from the office.

20. Plaintiff received no additional recognition, additional pay, overtime compensation, or commission adjustments for carrying this additional burden, yet was forced to split his commissions equally with Werner, Jissela, and Julien.

21. Around 2021, when Plaintiff objected to the unequal distribution of work and informed Werner and Jissela that it was unfair for him to cover all of the Harlem and Brooklyn showings, Defendant Werner responded: "Aren't you the Harlem guy anyway?" Plaintiff responded: "That's racist—why, because I am Black?" Werner had no answer. Werner made this racially charged comment to imply Plaintiff was only hired because he was Black on multiple separate occasions, approximately five (5) times in total. Werner continued to refer to him as the "Harlem guy" to other coworkers, stating that Plaintiff was only hired to attend Harlem showings even after Plaintiff repeatedly told Werner to stop and explained his professional qualifications and years of experience. Werner did not deny making these comments, and Human Resources did not deny that they were made.

22. The racially charged insinuation underlying Werner's repeated 'Harlem guy' comments reflected a broader discriminatory pattern at Akelius: Plaintiff was hired, in whole or in part, because Akelius perceived that, as a dark-skinned Black man, he would be able and willing to service Harlem and other neighborhoods that his white coworkers refused to work. To Plaintiff's knowledge, no dark-skinned Black employee held a higher-level professional or

managerial position at Akelius's New York office. Black employees with visibly darker skin held only lower-level positions such as Porter or Superintendent. This pattern of employment, combined with the treatment Plaintiff experienced, constitutes discrimination on the basis of both race and color including intra-race color discrimination based on the darkness of Plaintiff's complexion in violation of the NYSHRL and NYCHRL.

23. Defendant Werner's discriminatory conduct toward Plaintiff was not isolated to a single incident. Werner continued to make racially derogatory comments about Plaintiff and to undermine him to coworkers from the outset of his employment through at least 2023, when Plaintiff again directly confronted her about her conduct.

24. At all times material, Defendants subjected Plaintiff to a hostile work environment on the basis of his race and color.

25. In addition to her racially derogatory comments, Werner openly criticized Plaintiff's work to coworkers, insinuating that his assignments were a product of his race rather than his qualifications.

26. Notably, at the time Plaintiff was hired, Werner had been employed at Akelius for approximately one year and this was her first job out of college. Despite Plaintiff's superior qualifications including more than ten years of industry experience Werner was permitted to refuse work assignments, make racially derogatory comments about Plaintiff, and ultimately be promoted to Junior Construction Manager when Plaintiff was transferred, all without meaningful consequence.

27. Plaintiff complained verbally to Julien about Werner's racist comments and conduct. Julien acknowledged that the treatment was unfair but stated that his "hands were tied." Plaintiff also complained in writing to Andrew Nicol, his supervising Asset and Property Manager, around

November 15, 2021 regarding Werner's and Jissela's refusal to perform assigned duties and the discriminatory burden placed on Plaintiff as a result. Despite receiving this formal complaint, Akelius failed to take any prompt, effective, or meaningful remedial action.

## C. Retaliation and Adverse Employment Actions

28. Rather than take corrective action, Akelius retaliated against Plaintiff for his complaints. Around December 6, 2021, approximately three weeks after his formal written complaint Andrew Nicol suggested, and effectively pressured, Plaintiff into accepting a transfer (he did not request or volunteer) to the role of Junior Construction Manager, in an entirely different department. This transfer came with no pay increase and eliminated Plaintiff's commission-based compensation entirely, causing him to forfeit all future commissions he would have earned had he remained in the Leasing Manager role. The position was materially different and provided fewer income opportunities than his Leasing Manager role.

29. Despite the adverse nature of this involuntary transfer, Plaintiff excelled in the Junior Construction Manager role, completing construction projects in record time. A senior construction manager known as "Zim" stating something to the effect of "Wow, you did that? That is amazing."

30. Around 2022, Plaintiff continued to perform well in his role without significant issue until the end of 2022 and early 2023.

## D. Construction Manager Title Change Without Pay — Continued Discrimination, Retaliation, and Pretext

31. Around February 2023, without offering Plaintiff any pay increase, additional training, or meaningful support, Defendant Akelius reassigned Plaintiff involuntarily with a title change to Construction Manager.  Plaintiff had not applied for or sought this particular title change; it was presented to him upon his return from vacation. At the same time, Akelius replaced

8

Plaintiff as Junior Construction Manager with Defendant Werner — the very coworker whose racist comments and discriminatory conduct Plaintiff had formally complained about in as in his previous position.

32. At the time of this title change, Head of New York Defendant Khosravani openly stated, in front of other employees, that she was "all for female empowerment" and that "they needed a woman in there" referring to Werner replacing Plaintiff.  Khosravani also falsely praised Werner as the "number one leasing agent," a characterization Plaintiff immediately corrected, explaining that he and Jerome were the top producers. Akelius's decision to replace Plaintiff with Defendant Werner on the basis of her sex/gender, while simultaneously citing Plaintiff's race-tinged undervaluation, constitutes unlawful sex/gender and race discrimination.

33. Around the same time, Akelius posted a job listing on LinkedIn for a Construction Manager position listing a salary of approximately $140,000 while paying Plaintiff only $115,000 for the same role with the same or substantially similar responsibilities. Other Construction Managers with less experience and less seniority than Plaintiff were paid approximately $120,000 or more. Plaintiff was the only Black Construction Manager and was paid the least of any Construction Manager. Plaintiff's coworker confirmed to him that the coworker was paid more than Plaintiff despite performing less work.

34. Around February 23, 2023, Plaintiff met with Defendant Hubbard to formally request a raise commensurate with his title and responsibilities as Construction Manager. Akelius refused, claiming without merit that Plaintiff lacked the requisite experience—experience that Akelius itself had withheld by failing to train him.

35. Around March 15, 2023, Plaintiff submitted a second formal written complaint to Defendant Hubbard and supervisor Martin Alvero, reporting that Werner was continuing to call him the

"Harlem guy" to coworkers, that she was openly criticizing his work, and that the workplace was discriminatory and hostile. Akelius again took no meaningful action. Werner was not terminated. Werner was not subjected to meaningful discipline.

36. Defendant Akelius intentionally set Plaintiff up to fail in the Construction Manager role. At the time of his title change, Akelius's best Construction Manager had quit ("Zim"), another experienced Construction Manager had gone on maternity leave (Melissa Feld), and two others had been terminated. Plaintiff was effectively given the workload of four experienced Construction Managers while being paid less than any of them, denied adequate training, and denied meaningful support from supervisors.

37. Akelius further disadvantaged Plaintiff by consistently reducing his project budgets — from $5,000 to as low as $500 — while providing Defendant Werner with larger budgets. On or about February 25, 2024, Defendant Winn gave one of Plaintiff's Brooklyn projects to Werner without consulting Plaintiff, in contravention of standard Akelius practice. When Plaintiff objected, Winn responded: "Sorry bro."

38. Throughout the same period, Construction Manager "Davis" — a Caucasian, male repeatedly made significant errors, held up projects, and required Plaintiff and another supervisor to spend hours correcting his work. Davis was never reprimanded and was, in fact, given an award by Akelius. This disparate treatment demonstrates that Akelius applied a higher performance standard to Plaintiff than to similarly situated white employees.

39. Around July 21, 2023, Plaintiff received his first written criticism of his work performance in an email from supervisor Martin Alvero. Martin Alvero subsequently told Plaintiff privately that he did not want to send this email but that Defendant Khosravani had insisted. This was the first time Plaintiff received any criticism of his work in over two and a half years of

employment. Around October 11, 2023, Plaintiff responded to this email, detailing his strong performance record and noting the absence of any prior criticism.

40. Also around the same time Martin Alvero was terminated by Akelius and, before departing, warned Plaintiff to "watch his back" and that Akelius was "gunning for him." This caused Plaintiff severe and lasting anxiety. From that point until his termination, Plaintiff woke up each morning expecting to be fired, creating a constant and debilitating undercurrent of stress.

41. From approximately late 2023 through early 2024, Construction Managers Melissa Feld and "Eric" were assigned to shadow Plaintiff to provide feedback to Winn regarding Plaintiff's work performance. Victoria Gilbert, an Assistant Manager, was also assigned to report on Plaintiff's performance and submitted reports that Akelius used against him. During this period, other Construction Managers came to Plaintiff with questions about construction projects directly contradicting any claim that he was incompetent.

42. Around February 26, 2024, Plaintiff sent a formal email to Defendant Hubbard explicitly detailing the hostile work environment he was experiencing, the failure to pay him equitably, the forced title change without compensation, and the resulting negative impact on his health, well-being, and use of sick days. Hubbard verbally acknowledged the complaints and made several "off the record" comments but took no meaningful corrective action. Hubbard offered only to return Plaintiff's sick days and informally indicated the maximum Akelius would offer in severance was three to four months of his salary.

43. Around March 1, 2024, Plaintiff sent a formal email to his supervisor and team requesting clarification of his duties and assistance in performing his role, which continued to go unanswered.

44. Around March 6, 2024, Plaintiff submitted another formal written complaint to Human Resources referencing "inequitable" treatment and "fair compensation," to no avail.

45. Around May 15, 2024, Defendant Winn emailed Plaintiff with purported concerns about his performance and project delays—concerns that were either fabricated, exaggerated, or attributable to Akelius's own failure to provide training, support, and adequate resources.

46. Around May 16, 2024, Plaintiff rejected and disputed Defendants claims demonstrating in detail that the purported performance issues were the product of Akelius's systemic failures not his own inadequacy, and that he had repeatedly sought guidance without receiving it. That same day, Plaintiff met with Defendant Khosravani, who suggested Plaintiff voluntarily return to a leasing role. Plaintiff declined, recognizing this as an effective demotion that would reward his harassers and penalize him for his complaints.

47. On May 20, 2024, Akelius terminated Plaintiff's employment, presenting a list of pretextual infractions that were unsupported by the evidence and inconsistent with how Akelius had treated similarly situated white and non-Black employees. Akelius did not place Plaintiff on a Performance Improvement Plan prior to termination, as it had done with other employees. Akelius did not offer severance. During the termination meeting, Plaintiff disputed the accuracy of the infractions, but his objections were ignored. Following his termination, Akelius contacted a contractor who had worked with Plaintiff and solicited negative opinions about his professional performance, a practice not applied to other former employees.

**E. Sexual Harassment and Sex/Gender Discrimination**

48. Throughout his employment, Plaintiff was subjected to unwelcome sexual harassment by Defendant Khosravani. At a company soccer game in the summer of 2023, in the presence of her husband and at least one other person, Khosravani made repeated and unwelcome

12

sexualized comments about Plaintiff's physique, stating to the effect that Plaintiff's body was superior to and more attractive than her husband's. Khosravani directed desirous, sexualized looks at Plaintiff while making these comments. Her husband became visibly upset and walked away. Plaintiff was made deeply uncomfortable and also walked away.

49. Khosravani's sexualized comments were not isolated. Throughout Plaintiff's employment, Khosravani made multiple unsolicited and unwelcome comments comparing Plaintiff's physical appearance and body to her husband's, consistently expressing that Plaintiff's physique was superior. These comments were accompanied by sexually desirous looks and conduct directed at Plaintiff, creating a hostile and uncomfortable environment for him.

50. Around 2024, upon Plaintiff's return from a vacation with his girlfriend, Defendant Khosravani learned of the girlfriend's existence and exhibited an inappropriate and hostile reaction—questioning the nature and existence of Plaintiff's relationship in an intrusive and unwelcome manner that further contributed to the hostile work environment.

51. Akelius also forced employees, including Plaintiff, to attend a company outing at which a sexually explicit, rated-R movie was screened in a group setting. Employees were uncomfortable but felt compelled to attend given the employer-organized context.

52. On at least one occasion during a meeting, Defendant Hubbard asked Plaintiff whether he was "seeing anyone" in the office and, when Plaintiff said no, pressed him with the question "Why not?" —an inappropriate intrusion into his personal life in a professional setting. Additionally, after Plaintiff's termination, Defendant Hubbard contacted Plaintiff and asked whether he had "hooked up" with another woman — an invasive and sexually charged inquiry with no legitimate employment-related purpose.

**F. Wage and Hour Violations**

53. During his tenure as a Leasing Manager from approximately February 2021 through December 2021, Plaintiff and his three-person team split leasing commissions equally. Plaintiff performed approximately fifty percent (50%) of the deals on the team, substantially more than Werner and Jissela, who refused to work certain neighborhoods for discriminatory reasons. Despite this, Plaintiff was required to split commissions equally, a substantial portion of earned commissions to which he was entitled."

54. During his tenure as Leasing Manager, Plaintiff was required to work Saturdays and additional days beyond his regular schedule without receiving overtime compensation. Akelius had no clock-in or clock-out system and did not track overtime. In or about February 2022, Defendant Khosravani explicitly directed Plaintiff to work weekends. Plaintiff routinely worked more than forty (40) hours per week during his time as Leasing Manager without receiving overtime compensation.

55. Throughout his employment as Construction Manager, Plaintiff was paid $115,000 annually, while other Construction Managers—who were white or non-Black and had less experience and less seniority with the company—were paid $120,000 or more. At the same time, Akelius posted a job listing for a Construction Manager at approximately $140,000. Plaintiff was the only Black Construction Manager and was paid the least. This pay disparity was not based on any legitimate, job-related factor and constitutes unlawful pay discrimination.

56. Notably, Akelius was aware of the pay disparity. When Plaintiff informed Defendant Khosravani that he was the least-paid Construction Manager, Khosravani did not dispute it and took no action. Human Resources informed Plaintiff that his pay was "what a new person

14

would come in and get"—an acknowledgment that his compensation was deliberately depressed despite his experience and seniority.

**G. Post-Termination Housing Retaliation**

57. During Plaintiff's employment and continuing thereafter, Plaintiff resided in an apartment unit owned and managed by Akelius in Brooklyn, New York 11215.

58. Around January 2024, Plaintiff's apartment suffered significant flooding damage from an upstairs tenant. Rather than address the repairs promptly and appropriately, Akelius subjected Plaintiff to a series of discriminatory and retaliatory indignities in connection with the repair and habitability of his home: (a) Akelius demanded that Plaintiff provide proof of payment of an insurance deductible before reimbursing him—a requirement not imposed on other tenants; (b) Defendant Khosravani directed that Plaintiff not be reimbursed for a hotel stay even while his bathroom and kitchen were taped off and uninhabitable; (c) Akelius failed to provide Plaintiff advance notice before entering his apartment to conduct repairs; (d) as of the time of Plaintiff's termination, the ceiling and walls of his apartment remained cracked and no inspections had been conducted.

59. Following Plaintiff's termination and his initiation of legal claims against Akelius, Akelius engaged in a pattern of retaliatory conduct directed at Plaintiff as a tenant. Specifically: (a) In or about June and July 2025, Akelius employees made verbal statements to contractors working in Plaintiff's building that Plaintiff was a "problem tenant" and "trouble"— defamatory statements that had no basis in fact and were made for retaliatory purposes. At least one contractor told Plaintiff that he had also seen an internal Akelius email echoing the same false statements about Plaintiff; (b) In or about July 2025, Akelius's new property manager Shayla contacted Plaintiff to claim, for the first time, that his security deposit had never been

15

paid—despite the fact that Plaintiff had paid it and a prior property manager, Marie, had been told the same; (c) Akelius began assessing and compounding late fees in connection with the disputed security deposit, which Plaintiff is not obligated to pay; (d) In or about August 2025, Plaintiff signed a lease renewal that Akelius subsequently refused to countersign—and instead sent a new lease with different terms—effectively threatening eviction to coerce Plaintiff into abandoning his legal claims; (e) On or about November 3, 2025, Akelius notified Plaintiff it was deducting the disputed security deposit from his rent payments, further interfering with his tenancy rights.

60. Akelius's conduct with respect to Plaintiff's tenancy was motivated by his race, color, and/or by his exercise of protected rights in opposing employment and housing discrimination. Akelius would not have subjected a non-Black tenant, or a tenant who had not opposed its unlawful practices, to this pattern of retaliatory conduct.50.    The course of conduct described above constitutes discriminatory interference with Plaintiff's right to enjoy his housing free from discrimination and retaliation, in violation of the New York State Human Rights Law § 296(5) and the New York City Human Rights Law § 8-107(5).

**H. Defamation**

61. Around June and July 2025, Akelius, through its agents and employees, made a false and defamatory statement to third-party contractor working at Plaintiff's building. Specifically, Akelius employees and/or agents falsely portrayed Plaintiff as a "problem tenant" and said "that guy [Plaintiff] is trouble." These statements were false. Akelius's employees published similar false statements in an email to a third party, as one contractor in an internal Akelius email.

16

62. Additionally, after Plaintiff's termination, Defendant Winn contacted a contractor who had worked with Plaintiff during his employment and solicited negative opinions about his work performance. The contractor's report about Plaintiff was positive, yet the act of contacting the contractor was itself defamatory and harmful to Plaintiff's professional reputation, as it implied that Plaintiff's work performance was in question and spread those implications within the contracting community with which Plaintiff works and must continue to work in his industry.

63. These statements were made with knowledge of their falsity or with reckless disregard for the truth. Plaintiff has suffered and will continue to suffer damage to his professional reputation, loss of professional opportunities in the contracting community, and significant emotional distress as a direct result of these false statements.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION

Race and Color Discrimination in Violation of the New York State Human Rights Law (N.Y. Exec. Law § 296 et seq.) (Against All Defendants)

64.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

65.     The NYSHRL makes it an unlawful discriminatory practice for an employer, because of race or color, to discriminate against any person in compensation or in the terms, conditions, or privileges of employment. N.Y. Exec. Law § 296(1)(a). Akelius is strictly liable for the discriminatory conduct of its supervisors. Individual Defendants are each individually liable for their direct participation in and aiding and abetting of discriminatory conduct.

66.    Defendants discriminated against Plaintiff on the basis of his race and color by, among other things, forcing him to exclusively service neighborhoods his white coworkers refused on racial grounds without additional compensation, denying him equal access to work resources, transferring him in retaliation for his complaints, assigning him a title change without commensurate pay or training, paying him less than white and non-Black comparators, assigning him inferior projects and budgets, holding him to a higher performance standard than white employees, and terminating him based on pretextual infractions not applied to non-Black employees.

67.    Plaintiff has suffered damages.

## AS AND FOR A SECOND CAUSE OF ACTION

### Race and Color Discrimination in Violation of the New York City Human Rights Law (N.Y.C. Admin. Code § 8-107 et seq.) (Against All Defendants)

68.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

69.    The NYCHRL makes it unlawful for an employer or any employee to discriminate against any person in the terms, conditions, or privileges of employment because of race or color. N.Y.C. Admin. Code § 8-107(1)(a). Any unequal treatment based on race is actionable regardless of whether it constitutes a materially adverse employment action. Akelius is strictly liable for the conduct of employees with any supervisory responsibilities. N.Y.C. Admin. Code § 8-107(13). The Faragher-Ellerth affirmative defense is unavailable.

70. Defendants discriminated against Plaintiff on the basis of his race and color in violation of the NYCHRL as set forth herein.

71. Plaintiff has suffered damages.

## AS AND FOR A THIRD CAUSE OF ACTION

Sex/Gender Discrimination in Violation of the New York State Human Rights Law (N.Y. Exec. Law § 296 et seq.) (Against Defendants Akelius and Khosravani)

72. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

73. The NYSHRL prohibits discrimination in employment on the basis of sex or gender. N.Y. Exec. Law § 296(1)(a).

74. Defendants discriminated against Plaintiff on the basis of his sex and gender by, among other things, Khosravani openly stating that "they needed a woman" as the basis for replacing Plaintiff with Werner regardless of comparative qualifications, and by creating and maintaining a pervasively sexualized workplace environment that subjected Plaintiff to unwanted sexual attention and commentary based on his sex.

75. Plaintiff has suffered damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

Sex/Gender Discrimination in Violation of the New York City Human Rights Law (N.Y.C. Admin. Code § 8-107 et seq.) (Against Defendants Akelius and Khosravani)

19

76.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

77.    The NYCHRL prohibits discrimination based on sex and gender. N.Y.C. Admin. Code § 8-107(1)(a). Akelius is strictly liable for the conduct of supervisors including Khosravani.

78.    Defendants discriminated against Plaintiff on the basis of his sex and gender in violation of the NYCHRL as set forth herein.

79.    Plaintiff has suffered damages.

AS AND FOR A FIFTH CAUSE OF ACTION

Race/Color Hostile Work Environment in Violation of the New York State Human Rights Law

(N.Y. Exec. Law § 296 et seq.) (Against All Defendants)

80.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

81.    The NYSHRL, as amended effective August 12, 2019,  prohibits harassment based on race or color that subjects a complainant to inferior terms, conditions, or privileges of employment. The prior "severe or pervasive" standard has been expressly abrogated; the conduct need only exceed petty slights or trivial inconveniences as viewed by a reasonable victim with the same protected characteristic. N.Y. Exec. Law § 296(1)(h). Because the hostile work environment resulted in tangible employment actions including Plaintiff's termination, and because Plaintiff's complaints were futile, the Faragher-Ellerth affirmative defense is unavailable.

82.    Defendants created, maintained, and condoned a racially hostile work environment to which Plaintiff was subjected throughout his employment, including through repeated racial slurs

20

and derogatory comments, discriminatory work assignments, exclusion from shared resources, dismissal of his complaints, and a sustained campaign to force him out.

83.     Plaintiff has suffered damages.


## AS AND FOR A SIXTH CAUSE OF ACTION

Race/Color Hostile Work Environment in Violation of the New York City Human Rights Law

(N.Y.C. Admin. Code § 8-107 et seq.) (Against All Defendants)


84.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

85.     The NYCHRL prohibits any conduct exceeding petty slights or trivial inconveniences that creates inferior conditions of employment based on a protected characteristic. N.Y.C. Admin. Code § 8-107. Akelius is strictly liable for supervisors' conduct. The Faragher-Ellerth defense is unavailable.

86.     Defendants subjected Plaintiff to a racially hostile work environment in violation of the NYCHRL as set forth herein.

87.     Plaintiff has suffered damages.


## AS AND FOR A SEVENTH CAUSE OF ACTION

Sexual Harassment and Sex-Based Hostile Work Environment in Violation of the New York

State Human Rights Law (N.Y. Exec. Law § 296(1)(h) et seq.) (Against Defendants Akelius,

Khosravani, and Hubbard)


21

88.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

89.     The NYSHRL, as amended effective August 12, 2019 prohibits sexual harassment in the workplace. The "severe or pervasive" standard has been expressly abrogated; harassment is unlawful so long as it exceeds petty slights or trivial inconveniences as viewed by a reasonable victim with the same protected characteristic. N.Y. Exec. Law § 296(1)(h). Because the hostile work environment resulted in tangible employment action and Plaintiff's complaints were futile, the Faragher-Ellerth defense is unavailable.

90.     Defendants subjected Plaintiff to pervasive unwelcome sexual harassment, including repeated sexualized comments about his body by Khosravani, desirous conduct directed at him, intrusive inquiries into his personal relationships by both Khosravani and Hubbard, and a pervasively sexualized workplace culture, all of which created a hostile work environment based on his sex.

91.     Plaintiff has suffered damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

Sexual Harassment and Sex-Based Hostile Work Environment in Violation of the New York City Human Rights Law (N.Y.C. Admin. Code § 8-107 et seq.) (Against Defendants Akelius, Khosravani, and Hubbard)

92.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

93.     The NYCHRL strictly prohibits sexual harassment and sex-based hostile work environment and imposes strict employer liability for supervisors' conduct. N.Y.C. Admin. Code

§§ 8-107(1), (13). Any conduct above a petty slight or trivial inconvenience is actionable. The Faragher-Ellerth defense is unavailable.

94.     Defendants subjected Plaintiff to sexual harassment and a sex-based hostile work environment in violation of the NYCHRL as set forth herein.

95.     Plaintiff has suffered damages.

## AS AND FOR A NINTH CAUSE OF ACTION

Retaliation in Violation of the New York State Human Rights Law (N.Y. Exec. Law § 296(7) et seq.) (Against All Defendants)

96.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

97.     The NYSHRL makes it unlawful to retaliate against any person for opposing discriminatory practices or making a complaint thereunder. N.Y. Exec. Law § 296(7). The scope of an adverse employment action for retaliation is broader than for discrimination claims and is not limited to actions affecting the terms and conditions of employment.

98.     Plaintiff engaged in protected activity by making multiple formal and informal complaints of race discrimination, sex discrimination, sexual harassment, and wage violations throughout his employment. Defendants retaliated against Plaintiff for each such complaint by, among other things, transferring him, denying pay increases, assigning inferior work, imposing heightened scrutiny, issuing pretextual performance criticism, terminating his employment, and continuing to retaliate post-termination through adverse housing and defamatory conduct.

99.     Plaintiff has suffered damages.

<u>AS AND FOR A TENTH CAUSE OF ACTION</u>

<u>Retaliation in Violation of the New York City Human Rights Law (N.Y.C. Admin. Code § 8-107(7) et seq.) (Against All Defendants)</u>

100.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

101.    The NYCHRL prohibits retaliation against any person who opposes any practice forbidden under the NYCHRL. N.Y.C. Admin. Code § 8-107(7). Retaliation under the NYCHRL includes any conduct reasonably likely to deter a person from engaging in protected activity.

102.    Plaintiff engaged in protected activity and Defendants retaliated against him with conduct reasonably likely to deter such activity, as set forth herein. A causal connection exists between each protected activity and the retaliatory conduct that followed.

103.    Plaintiff has suffered damages.


<u>AS AND FOR AN ELEVENTH CAUSE OF ACTION</u>

<u>Unequal Pay on the Basis of Race and Color in Violation of the New York Achieve Pay Equity Act (NYLL § 194) (Against Defendant Akelius)</u>

104.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

105.    New York Labor Law § 194 prohibits paying an employee within a protected class a lower wage than employees outside that class for equal work requiring equal skill, effort, and responsibility under similar working conditions, unless the differential is based on a bona fide,

job-related factor consistent with business necessity. NYLL § 194(1). A willful violation entitles Plaintiff to liquidated damages of up to three hundred percent (300%) of the wages due. NYLL § 198.

106. Akelius violated NYLL § 194 by paying Plaintiff — the only Black Construction Manager — less than white and non-Black Construction Managers with less experience and seniority, and while advertising the same role externally at a substantially higher salary, without any bona fide, job-related justification for the disparity. The violation was willful.

107. Plaintiff has suffered damages.

## AS AND FOR A TWELFTH CAUSE OF ACTION

### Retaliation for Wage Complaints in Violation of New York Labor Law § 215 (Against Defendant Akelius)

108. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

109. New York Labor Law § 215 prohibits an employer from retaliating against any employee who complains about a violation of the New York Labor Law. An informal internal complaint suffices to establish protected activity.

110. Plaintiff made multiple formal and informal complaints about Akelius's violations of NYLL § 194 and Article 19, including in writing to Human Resources on or about February 23, 2023 and February 26, 2024, and directly to Defendant Khosravani. Akelius retaliated by ignoring his complaints, issuing pretextual criticism, and ultimately terminating his employment.

111. Plaintiff has suffered damages.

25

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

Failure to Pay Overtime Wages in Violation of New York Labor Law Article 19 (§§ 650 et seq.)

and 12 N.Y.C.R.R. § 142-2.2 (Against Defendant Akelius)

112.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

113.    New York Labor Law Article 19 and its implementing regulation, 12 N.Y.C.R.R. § 142-2.2, require employers to pay covered employees one and one-half times their regular rate of pay for all hours worked in excess of forty (40) per week.

114.    During his tenure as Leasing Manager, Plaintiff routinely worked in excess of forty hours per week as a direct result of his coworkers' discriminatory refusal to service certain neighborhoods, and during his tenure as Junior Construction Manager and Construction Manager Plaintiff worked seven days a week without clocking in or out. Plaintiff was also explicitly directed by Defendant Khosravani to work weekends without additional compensation. Akelius willfully failed to pay Plaintiff any overtime compensation for these hours despite full knowledge of the additional work.

115.    Plaintiff has suffered damages.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

Failure to Pay Earned Wages and Commissions in Violation of New York Labor Law Article 6

(§§ 190 et seq.) (Against Defendant Akelius)

26

116.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

117.    New York Labor Law Article 6 requires employers to pay employees all earned wages and commissions when due. Commissions constitute wages within the meaning of the NYLL. NYLL § 190(1).

118.    Akelius failed to pay Plaintiff the full value of his earned commissions by requiring him to split commissions equally with coworkers who, for discriminatory reasons, refused to perform the work that generated those commissions. Plaintiff's retaliatory transfer to Junior Construction Manager in December 2021 further eliminated his commission-based compensation entirely, causing him to forfeit all future commissions he would have earned had he remained in the Leasing Manager role.

119.    Plaintiff has suffered damages.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION

Aiding and Abetting Discrimination and Retaliation in Violation of the NYSHRL and NYCHRL

(Against Individual Defendants Khosravani, Hubbard, Winn, and Werner)

120.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

121.    Pursuant to NYSHRL § 296(6) and NYCHRL § 8-107(6), it is an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any act forbidden under these statutes, or to attempt to do so.

122. Each of the Individual Defendants directly participated in and aided and abetted the discriminatory, harassing, and retaliatory conduct directed at Plaintiff as set forth herein, including by making discriminatory and harassing comments, orchestrating adverse employment actions, burying Plaintiff's complaints, reassigning his work, and building a pretextual case for his termination.

123. Plaintiff has suffered damages.

AS AND FOR A SIXTEENTH CAUSE OF ACTION

Discriminatory and Retaliatory Interference with Housing Rights in Violation of NYSHRL § 296(5) and NYCHRL § 8-107(5) (Against Defendant Akelius)

124. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

125. NYSHRL § 296(5)(a) and NYCHRL § 8-107(5) prohibit discrimination and retaliation against any person in the terms, conditions, and privileges of a housing accommodation on the basis of race, color, or other protected characteristics, and bar landlords from retaliating against tenants for opposing discriminatory practices.

126. Akelius, acting simultaneously as Plaintiff's employer and landlord, discriminated against and retaliated against Plaintiff in the terms and conditions of his tenancy because of his race and color and his exercise of protected rights, by among other things callously mishandling his apartment flooding emergency, making defamatory statements to contractors in his building, manufacturing a false security deposit dispute, refusing to countersign his signed lease renewal, and threatening his tenancy to coerce him into abandoning his legal claims.

127.    Plaintiff has suffered damages.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION

## Defamation and Defamation Per Se (Against Defendant Akelius) (Common Law of the State of New York)

128.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

129.    Around June and July 2025, Defendant Akelius, through its agents and employees, published false and defamatory statements concerning Plaintiff to third-party contractors. These statements were published both orally and in written internal emails that were seen by third parties.

130.    Each of these statements was false. Plaintiff is not a problem tenant, did not cause trouble, and his professional work performance was not deficient. These statements are defamatory per se because they impute to Plaintiff conduct incompatible with the proper conduct of his business, trade, or profession, and because they expose him to contempt and ridicule.

131.    These statements were made with knowledge of their falsity, or with reckless disregard for the truth, or with malice, and were motivated by Akelius's desire to harm Plaintiff's reputation in retaliation for his legal claims.

132.    As a direct and proximate result of these false statements, Plaintiff has suffered damages to his professional reputation, emotional distress, embarrassment, and loss of business and employment opportunities.

133.    Plaintiff has suffered damages.

AS AND FOR AN EIGHTEENTH CAUSE OF ACTION

Retaliation in Violation of New York Labor Law § 740 (New York Whistleblower Law, as

Amended Effective January 26, 2022) (Against Defendant Akelius)

134.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

135.    New York Labor Law § 740, as amended effective January 26, 2022,  prohibits an employer from taking retaliatory action against an employee who discloses or threatens to disclose to a supervisor an activity, policy, or practice that the employee reasonably believes violates any law, rule, or regulation. NYLL § 740(2). Proof of an actual violation is not required — a reasonable belief suffices. Internal complaints to supervisors constitute protected disclosures. Because Plaintiff's termination occurred on May 20, 2024, the amended version of NYLL § 740 applies in full.

136.    Plaintiff engaged in protected whistleblowing activity by making multiple written and verbal internal complaints to supervisors and Human Resources disclosing Akelius's violations of NYLL § 194 and Article 19, including his formal written complaints of November 2021, February 2023, and February 2024, and his direct complaints to Defendant Khosravani about being the least-paid Construction Manager.

137.    Akelius retaliated against Plaintiff for his protected disclosures by transferring him, denying pay increases, building a pretextual performance record, terminating his employment in close temporal proximity to his complaints, and continuing to retaliate post-termination through adverse housing actions and defamatory statements to contractors.

30

138.    Plaintiff has suffered damages and is entitled to all remedies available under NYLL § 740(5), including reinstatement, back pay, benefits, reasonable attorneys' fees and costs, and a civil penalty not to exceed ten thousand dollars ($10,000) per violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Daoud Nelson respectfully demands judgment against Defendants as follows:

a.    A declaration that Defendants' acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by the NYSHRL, NYCHRL, NYLL, and New York common law;

b.    An award of all compensatory damages to which Plaintiff is entitled, including back pay, front pay, lost benefits, and lost commissions, in amounts to be determined at trial;

c.    An award of compensatory damages for Plaintiff's emotional distress, pain and suffering, humiliation, and loss of enjoyment of life, in amounts to be determined at trial;

d.    An award of unpaid overtime wages and earned commissions, together with liquidated damages pursuant to NYLL §§ 198 and 663;

e.    An award of liquidated damages for willful violations of NYLL § 194 (Achieve Pay Equity Act) in an amount of up to three hundred percent (300%) of the wages found to be due, pursuant to NYLL § 198;

f.    An award of liquidated damages pursuant to NYLL § 215 not to exceed twenty thousand dollars ($20,000);

g.    An award of uncapped punitive damages against Defendants for their willful, wanton, and malicious conduct, in amounts to be determined at trial;

31

h.      An award of attorneys' fees, costs, and disbursements pursuant to NYSHRL, NYCHRL, and NYLL;

i.      Reinstatement and all remedies available under NYLL § 740(5), including a civil penalty not to exceed ten thousand dollars ($10,000) per violation;

j.      A permanent injunction enjoining Defendants from continuing to engage in discriminatory, harassing, or retaliatory conduct against Plaintiff with respect to his housing;

k.      Prejudgment interest as required by law; and

l.      Such other and further relief as this Court deems just and proper.

Dated: April 6, 2026
New York, New York

                              *Respectfully submitted,*

                              _____
                              Melissa Mendoza, Esq.
                              *Derek Smith Law Group, PLLC*
                              450 Seventh Avenue, 30th Floor
                              New York, New York 10123
                              332-910-5677
                              melissa@dereksmithlaw.com